et al. Arguments not to exceed 15 minutes per side. Ms. Seaton, with Mr. Manville for the appellant. Good morning, your honors. Daniel E. Manville, associate clinical professor with Michigan State University College of Law. I'm here to request and to present to this court Ms. Seaton, she's a third year law student, to argue this matter. The plaintiff has approved it, the dean has certified her in good standing, and this court has issued an order allowing her to argue. I'd like to present her to this court. Thank you, Mr. Manville. All right, Ms. Seaton, as you're coming forward, just for the record, this is a case in which the defendant's appellees have waived their right to argue and are submitting their position on the briefs in the court. Of course, the court will consider that along with the briefs of all the parties in the argument you make today, Ms. Seaton. Thank you, your honor. Good morning, your honors, and may it please the court, my name is Sharron Seaton and I am here on behalf of the appellant in this matter, Mr. Iswet. The defendants would like to make it seem like this case is about $10, but that is simply not the case. What this case is really about is a man who was unable to talk to his family for eight years. It is Iswet's contention that in 1994 in Washington v. Reno, this court clearly established prison officials could not impose unreasonable restrictions on telephone use where the prisoner has no other reasonable means to communicate with his family. Why is this unreasonable here? It's unreasonable in this case, your honor, because he had no other way to communicate with his family. Washington does not address the situation where an individual had no other means of communicating with family, does it? No, it doesn't, your honor. that certain limitations or restrictions on that right may be imposed, right? Right. And the reasons for the restrictions are not limited by Washington, correct? In other words, it doesn't have to necessarily be a security justification or a penological justification. It's silent as to the purpose of the restrictions. What's a legitimate purpose, right? Right. It is silent as to that, but it does state that the restrictions must be reasonable. And we would argue that in this case, the restrictions are unreasonable because they had already precluded him from writing letters to his family and receiving letters, so there was no other way for him to communicate other than telephone use. I think I'd like to see you focus on what about Washington would have let these correctional officers know that it was constitutionally required for them to overlook the restrictions of the prison policy and instead to do something different for your client. What was clearly established that would have made a reasonable officer know that what happened in this case was unconstitutional? We would argue that you can't ignore the Constitution and simply blindly follow prison policy. It's known that prisoners have constitutional rights to communicate with their family. The fact that he had no way for eight years while he was in prison to communicate with his family would show that there is a constitutional right to communicate. And if he's not being allowed to exercise his constitutional rights, then it should be clearly established. Was there a clearly established right in 2005 for an inmate to be able to communicate with his family? Yes. Unqualified right to communicate. Now what case supports that? That there was such an unqualified right for a prisoner to communicate with his family? What case do you cite to support that? Well in Washington v. Reno, it does state that the use of the telephone, that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends and also that there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone and such use is protected by the First Amendment. But it also goes on to say as far as the telephone, though, there can be subject to rational limitations, right? Correct. Does Washington also, the way you interpret it, put a rational limitation on the right to communicate just generally with your family? Can you rephrase the question? Yes. I mean the first part of the sentence you read, that there's a constitutional right under the First Amendment for inmates to communicate with their families. Is that subject to rational limitations? Yes. The use of the telephone is not an unlimited use. It can be limited in the face of legitimate... Maybe you did answer my question. The first part, just the general right of an inmate to communicate with his family. Is that subject to rational limitations? Yes, it is. Why? In case there are legitimate security interests of the penal institution, it can be limited. Well, if that's so, don't you lose then. No, Your Honor. Because a reasonable official wouldn't have known, based on just Washington, that the limitations of the Michigan prison policy would violate your client's constitutional rights. We would argue that there were no legitimate security interests or any other interests in limiting his use of the telephone. Speaking in Arabic to Jordan and Romania, they might have been plotting to overthrow the prison. Who knows what. Or to blow it up. Or whatever. Well, Your Honor, in the lower court, in the district court, the jury found that there were no legitimate security interests. And also, since the litigation in the lower court and the injunction, the defendants have submitted a notice of compliance in which they have expanded the countries that they allow phone access to to 130 countries. So if there was any security interest, it was very minimal. After the fact action by prison officials and the evaluation of the policy and the decision to comply with injunctive relief, that's really a separate question from what these individual corrections officials were faced with in light of Washington v. Reno. And the fact that a policy is in fact unconstitutional doesn't mean, doesn't really tell us much in this kind of context about what a reasonable officer might have thought. Well, the injunction was only to Iswha in particular. But when they complied with the injunction, they also spread it out to 130 other countries for all inmates. And the state is not contesting that. I mean, they agree, all right, that it was unconstitutionally limited and all that. But what they're fussing about, the only issue as I understand on appeal, was would a reasonable officer in 2005 have known this? Or was it only as a result of this litigation and the injunction that you won and all that? But that's not on appeal, is it? The injunction or the $50,000 legal fee and all that stuff. We're just fussing about whether qualified immunity should apply to these individual four officers. Isn't that the only issue on appeal? Yes, Your Honor. Why is it so important for you to win this case for the plaintiff here? Does it really make any difference in how he's going to be treated, whether it's qualified immunity or personal immunity or personal liability? It's important to show that it is clearly established that prisoners do have a right to communicate with their families. Well, that's already been taken care of by the injunction, has it not? And the jury finding has made that clear, too. And it's not been appealed. Why does not this tender of the money by the state moot this case at all? Didn't they offer to pay the $10? No, they didn't, Your Honor. What did they do? They claimed they offered to. Is that not true? That's untrue, Your Honor. What did they do? There was some whiff of $10 floating out there somewhere, wasn't there? No, we're here on appeal because we're requesting that they pay the fee and that the qualified immunity be reversed. They never suggested they would pay the $10? What they said in their brief is untrue, Your Honor. How do we know that? Just because you're saying so? We rebutted it in our reply brief. Well, I thought you didn't. I don't have it in front of me right now. But I thought there was a disagreement as to what happened, and the circumstances. I didn't think there was a disagreement that there was a discussion about their willingness to pay $10. It's my understanding that they did not offer to pay the $10. Did they send a letter suggesting that they were going to pay it, or some kind of communication, or are they not telling the truth about that? I don't believe so, Your Honor, from my understanding. Well, see, the defendants said in their brief they attempted to resolve this matter prior to filing this brief by offering to pay the outstanding $10. The offer was declined. And in your reply brief, you say there was no offer to settle, but just a statement whether you would still take $10, and if he's willing, let defendants counsel know. And, I mean, that's an overture that sounds pretty promising. In our reply brief on page 3 in the first footnote, we address this issue. And it states that in the appellee's brief on appeal, defendants claim that they attempted to resolve this matter prior to filing their brief by offering to pay $10. This is not the truth. Plaintiff's counsel had informed defendant's counsel that if offered $10, plaintiff was likely to agree to dismiss the appeal even prior to the briefing schedule being issued by this court. Well, if you win your case on all issues, the most that your client can get is $10, right? Plus maybe there's a little interest flowing around in that, but not a whole lot. So what advantage will you gain if you win today and get the $10 tomorrow? Anything? It would be a victory for our client. As I stated before, Your Honors, this is not about the money. It's about the eight years that our client had to spend without being able to communicate with his family. Well, he's brought about fundamental change in the way the prison does its business on that point. But I guess your position is he's going to feel much more vindicated if he has the money? Correct, Your Honor. And just to establish that prison officials can't blindly follow policy and ignore the Constitution. If a policy is clearly out of sync with the Constitution, then prison officials should not be given blanket immunity. This court should find that in 1994, the Sixth Circuit clearly established that prison officials could not impose unreasonable restrictions on telephone access where the prisoner has no other reasonable means to communicate with his family. The jury found that prison officials must impose unreasonable restrictions. I see that my time is up. You can finish your sentence. Thank you. The grant of qualified immunity should be reversed, and this matter remanded to the District Court for reinstatement of the jury's award of damages. Thank you, Your Honors. Thank you for your argument, Ms. Seaton. We appreciate your interest in appellate advocacy and your being here today, and I think you can take pride in having done well on what is presumably your first appearance in an appellate court. And, you know, yes, we pressed you with questions, and you withstood it as well as much more, in fact, better than many more seasoned counsel do, so we're very appreciative of your argument. Thank you. We will consider the case carefully.